OPINION
{¶ 1} Kristi Jo Jarnigan was indicted for tampering with evidence, a third-degree felony, and possession of crack cocaine, a fifth-degree felony. After the trial court overruled her motion to suppress evidence, Jarnigan pleaded no contest to tampering with evidence and the State dismissed the possession count. The trial court found *Page 2 
Jarnigan guilty of tampering with evidence and sentenced her to community control sanctions.
 {¶ 2} Jarnigan's assignment of error asserts that Dayton Police Detectives Gaier and Myers lacked legal justification to approach a parked car occupied by Jarnigan and Kimberly Bowling to investigate their activity within the car.
 {¶ 3} The only witness at the suppression hearing was Detective Gregory Gaier, whose testimony as to objective facts can be summarized as follows:
 {¶ 4} Detective Gaier and Detective Myers are officers with the City of Dayton Police Department. On September 5, 2007, at approximately 6:40 p.m., these officers were, according to the testimony of Detective Gaier, "checking known drug areas in the Twenty-one Hundred block of Edwin C. Moses Boulevard." The businesses in this area include a BP Gas Station, a Wendy's Restaurant, an Econo-Lodge Motel, and a McDonald's Restaurant.
 {¶ 5} The officers drove into the McDonald's parking lot and observed a gray Saturn, occupied by two females, that was parked in the back corner of the parking lot, away from the main entrance to the McDonald's. Jarnigan was identified as the passenger in the car. The officers drove by the car again, and then took up a position to monitor the car and its occupants.
 {¶ 6} The officers observed that the car had an out-of-county sticker, and they observed Jarnigan looking into her lap "as if she was manipulating something directly in front of her." The officers also observed the driver watching what Jarnigan was "doing" in her lap. After a few minutes of observing the car and its occupants, the officers pulled up beside the Saturn. Detective Gaier stated that the total time they were there, from *Page 3 
pulling in to the parking lot to pulling up beside the Saturn, was only five to six minutes.
 {¶ 7} The officers exited their vehicle, and Detective Myers yelled several times for the occupants of the Saturn to show their hands. Detective Gaier testified that Detective Myers said Jarnigan apparently began making "a grinding motion into her seat with her right hand between her legs." Detective Gaier said that when he reached Jarnigan's side of the vehicle he saw her pulling her hand up from the floorboard while holding a McDonald's cup.
 {¶ 8} Detective Gaier testified that based on Jarnigan's failure to obey the orders of Detective Myers to show her hands and upon her hand movements, he ordered her out of the vehicle. Detective Gaier said he then observed "a couple of little chunks of what [he] believed to be suspected crack cocaine," as well as powder on the seat which he believed was the result of someone grinding it into the seat. In addition, Detective Gaier stated a crack pipe was recovered from the floorboard where Jarnigan had reached and came back up holding a cup. Jarnigan was arrested for possession of drugs and possession of the crack pipe.
 {¶ 9} Detective Gaier, a nine and one-half year member of the Narcotics Bureau, also testified that "pretty much on a daily basis" detectives encountered individuals utilizing secluded areas of the parking lots of the four businesses-such as where the Saturn was parked-to prepare and use narcotics purchased on Dayton's West Side. He described the area as "a very high drug area" because of "pretty much. . . nightly" encounters with illegal drug use on the parking lots. Detective Gaier also said the out-of-county license plate sticker on the Saturn was an indication that the car was on the lot for illegal drug use. He also testified that Jarnigan's "manipulating" actions were *Page 4 
consistent with preparing narcotics for use. Detective Gaier also testified that neither occupant of the Saturn was observed consuming any food or exiting the car to enter the McDonald's.
 {¶ 10} Jarnigan contends that whether the detectives had a reasonable, articulable suspicion for an investigative stop must be determined solely on the observations of the detectives prior to Detective Myers' ordering the women to show their hands, because this show of authority constituted the stop. State v. Jordan (Mont. App. 22271), 2008-Ohio-199. In determining that the officers were justified in approaching the Saturn, the trial court confined itself to these observations, as do we.
 {¶ 11} The trial court relied on our opinion in State v. White (Mont. App. 18731), 2002-Ohio-262 wherein we said in part:
 {¶ 12} "The Ohio Supreme Court has found that `the propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. These circumstances must be considered `through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' State v. Andrews (1991), 57 Ohio St.3d 86, 87-88,565 N.E.2d 1271. For this reason, the court must take into consideration the officer's experience and training and understand how the situation would have been viewed by the officer on the street. Id. at 88."
 {¶ 13} Ruling from the bench, the court rationalized its decision as follows:
 {¶ 14} "I am going to make the determination that the Terry stop in this case was, in fact, Constitutionally appropriate. It did not violate the Fourth Amendment. *Page 5 
 {¶ 15} "I come to that based upon the experience that Officer Gaier and his partner, Detective Meyers, bring to the table. They are very familiar with this particular location. This is a location where, on a daily basis when they're on duty, they patrol. They know what the activities that occur at that location-what those activities are, and how events unfold. So you have to view this through the eyes of two detectives who are very experienced in dealing with this particular location and what occurs in and around these particular businesses.
 {¶ 16} "We have a situation where the vehicle was parked in that portion of the McDonald's parking lot, the southwest corner of the parking lot, where these officers, based upon their experience, know folks often park in order to consume the drugs that they have more than likely recently purchased from another area of the City of Dayton. And they know that those folks do not walk into the business to buy food, but they remain in their car.
 {¶ 17} "And through their binoculars they were able to see that the two individuals in the car, including Ms. Jarnigan, they were not consuming food; they were not looking at a purse; they were not looking at a map. Whatever was going on was going on in Ms. Jarnigan's lap. And it was consistent with what these officers have observed-have observed in the past, preparation for the consumption of some type of illegal narcotic, probably crack cocaine.
 {¶ 18} "And based upon the-location, the observations of Detective Gaier and Detective Meyers, the fact that this was an out-of-county plate, all of these things come together to create a situation where, in this Court's mind, there was a sufficient, reasonable, articulable suspicion of criminal activity to justify the Terry stop." *Page 6 
 {¶ 19} Jarnigan argues here, as she did below, that the observations of the detectives were simply insufficient to support a reasonable, articulable suspicion of criminal activity and that what the detectives observed could have been entirely innocent behavior: e.g., looking for food money, looking at a map, playing a McDonald's scratch-off game. We addressed this argument in White.
 {¶ 20} "White specifically argues that the stop was not justified because all of the activity witnessed by the officers was consistent with innocent activity and the officers did not witness any drugs or money exchanging hands. However, the Supreme Court has held that, while a series of events appear innocent when viewed separately, taken together, they can warrant further investigation. United States v.Sokolow (1989), 490 U.S. 1, 9-10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1. A reasonable and articulable suspicion to stop for further investigation requires something less than probable cause. Terry, supra at 22, 88 S.Ct. at 1880."
 {¶ 21} In our judgment, the trial court properly determined that the detectives' observations "warrant(ed) further investigation." Id.
 {¶ 22} Detective Gaier was a nine and one-half year veteran of the Narcotics Bureau. He articulated the significance of the Saturn being parked in a secluded area of the McDonald's parking lot, the out-of-county license plate sticker, and Jarnigan's "manipulating" actions. The stop occurred in a "very high drug area." Neither occupant of the car was consuming food or drink or exiting the car to enter the McDonald's.
 {¶ 23} In sum, we conclude that the trial court properly determined that the officers possessed a reasonable, articulable suspicion of criminal activity.
 {¶ 24} The assignment of error is overruled. *Page 7 
 {¶ 25} The judgment will be affirmed.
DONOVAN, P.J., and FROELICH, J., concur.
(Hon. William H. Wolff, Jr., retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Mathias H. Heck, Jr., Johnna M. Shia, Gregory Turner, Hon. Michael Tucker. *Page 1