[Cite as *State v. Todd*, 2011-Ohio-1740.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                         :

        Plaintiff-Appellee                            :        C.A. CASE NO.    23921

v.                                                    :        T.C. NO.    09CR2718

TERRY LEE TODD                                        :          (Criminal appeal from
                                                              Common Pleas Court)
        Defendant-Appellant                  :

                                                     :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___8th___ day of ___April___, 2011.

· · · · · · · · · ·

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JEFFERY REZABEK, Atty. Reg. No. 0069117, 111 West First Street, Suite 519, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

{¶ 1}  After the trial court overruled his motion to suppress, Terry Lee Todd pled no contest in the Montgomery County Court of Common Pleas to burglary, a second degree felony, and receiving stolen property, a fifth degree felony.  The court found him guilty and

sentenced him to an aggregate term of five years in prison.

{¶ 2}  Todd appeals from his conviction following the denial of his motion to suppress.  For the following reasons, the trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

I

{¶ 3}  The State's evidence at the suppression hearing established the following facts:

{¶ 4}  At approximately 9:00 a.m. on August 20, 2009, Lieutenant Jeffrey Yount of the Oakwood Public Safety Department, a 20-year veteran, heard a dispatch that there was a suspicious male walking in the area of Acorn Drive and Patterson Road.  The caller described the man as having tattoos and "just didn't fit the area."  A crew responded but was unable to locate the suspect.  Approximately 15 to 20 minutes later, Yount heard a second dispatch that a man with a cut-off sweatshirt and many tattoos had approached a residence in the 300 block of Hathaway Road.  Although the exact wording of the second call is not entirely clear, the second caller apparently reported that the man was found looking into the caller's garage window, that the resident and the man had spoken about what the man was doing, and the man had said that he was looking for a friend.  Both callers had identified themselves to the dispatcher.

{¶ 5}  After the second call, Lieutenant Yount responded to the 300 block of Hathaway Road in a marked cruiser.  As Yount was about to turn onto Hathaway, he saw the suspect, who was later identified as Todd, walking in the roadway with his back to Yount.  Yount notified the dispatcher that he had located the suspect in the dead-end portion

of Hathaway. As Yount approached Todd with his cruiser, he saw Todd throw his arms into the air. Yount believed that Todd had just realized that he was walking on a dead-end street. Todd turned around and veered slightly off the roadway toward the house on the west side of Hathaway. Based on Todd's movements, Yount believed that Todd might attempt to run away. Yount activated his rear auxiliary lights, quickly parked his cruiser, got out of the vehicle, and ordered Todd to come over to him. Todd complied.

{¶ 6} When Todd approached, Yount observed that he was wearing a sweatshirt with the sleeves cut off and the collar cut; the sweatshirt hung several inches below the front and rear pockets of Todd's blue jeans. Todd appeared to be "highly shaken" and, throughout the encounter, Yount repeatedly ordered Todd to remove his hands from his front pockets.

{¶ 7} Lieutenant Yount asked Todd what he was doing. Todd indicated that he was walking home. Todd indicated that he lived at 508 Oak Street. Yount asked Todd if he knew where he was. Todd replied, "I'm lost and I got off the main street and I'm not sure where I'm at." When Yount told Todd that he was in Oakwood, Todd responded that he lived in Oakwood. Yount informed Todd that Oak Street was in Dayton, not Oakwood, and he asked Todd for identification. Todd reached into his back pocket and retrieved identification.

{¶ 8} Yount contacted dispatch and asked that the identification be run through the computer system. As Todd's identification was being checked, Yount asked Todd if he had been arrested previously. Todd said that he had been arrested for burglary. Yount asked Todd why he had approached a resident up the street. Todd stated that he was looking for a

friend, but he did not know the friend's name. Yount asked how Todd would know that the friend/acquaintance lived at that house; Todd responded, "Well I was just guessing. I thought that maybe I had the right house." During the conversation, Todd stated that he worked at Outback Steakhouse at Cross Pointe Center in Centerville and that he was coming home from work. Yount testified that Cross Pointe Center was approximately five to ten miles away.

{¶ 9} Because Todd had put his hands into his pockets five to ten times during their conversation, Lieutenant Yount asked him, "Do you have any guns, knives, hand grenades or atom bombs?" At the same time, Yount lifted up the right side of Todd's shirt. Todd said, "No." Todd put his hands into his front pocket and pulled out two cell phones, a digital camera, some foreign coins, and jewelry.

{¶ 10} There was conflicting testimony as to whether Yount had ordered Todd to empty his front pockets or whether Todd had emptied them spontaneously.[1] The trial court found: "After being told to take his hands out of his pockets several times, Lieutenant Yount saw that there was something bulging in a front pocket, and that was a great concern to him, so rather than pat the defendant down for fear that he might injure himself, he asked the defendant to remove what was in his pockets." Yount acknowledged that he had ordered Todd to place the items in front of him on the ground.

---

[1] At the suppression hearing, Lieutenant Yount denied that he had ordered Todd to empty his front pockets. However, Yount's original report of the incident, written on August 20, 2009, suggested the he had ordered Todd to remove items from his front pockets. Yount's supplemental report, written after Yount had met with the prosecutor, indicated that Todd removed the items spontaneously. Officer Gregory Ortel, who had arrived at the scene, originally testified that Yount had ordered Todd to empty his pockets. Upon cross-examination, Ortel testified that he did not specifically recall whether Yount had ordered Todd to empty his front pockets or whether Todd had done so spontaneously.

**{¶ 11}** After Todd emptied his front pockets, Yount asked him from where he had gotten the property. Todd stated that he had purchased one of the cell phones the night before and that he had not had time to delete the stored numbers on the phone. Yount took one of the cell phones, walked about 20 feet away, and dialed the last number on the phone; Yount wanted to see to whom the phone belonged. No one answered. As Yount was about to make another call from the phone, the phone rang. Yount answered and identified himself to the caller; the caller indicated that the phone belonged to Todd. The caller asked, however, that Yount not inform Todd that they had spoken.

**{¶ 12}** Lieutenant Yount returned to where Todd was standing with other officers. Yount had Todd turn around, and Yount lifted up Todd's shirt to see if he had any items in his back pockets. Yount explained that he was planning to place Todd under arrest "because we had enough information here that we knew we had something. We just didn't know exactly what it was we had at that point." Yount further indicated, however, that he no longer conducts patdowns due to officer safety issues. Yount saw that Todd had a two inch by three inch rectangular bulge in his back right pocket. Yount did not know if this item was a weapon, so he ordered Todd to remove it from the pocket. Todd removed a group of credit cards and gave them to Yount. Yount leafed through the stack and saw names other than Todd's; Yount also noted that the cards were expired.

**{¶ 13}** At this juncture, Todd was handcuffed and placed under arrest. Officer Ortel transported him to the Oakwood Public Safety Building on Park Avenue.

**{¶ 14}** Detective Alan Hill, a ten-year veteran, interviewed Todd at 10:10 a.m. regarding suspected burglary. Hill reviewed Todd's constitutional rights with him using a

standardized pre-interview form. Hill read each of Todd's rights to him, confirmed that Todd understood his rights, and had Todd initial next to each right. Hill reviewed the waiver of rights paragraph with Todd. Todd wrote the number of years of schooling that he had and signed the form. Todd did not ask for an attorney, he agreed to speak with Hill, and Todd did not seek to terminate the interview. Hill testified that he did not coerce Todd in any way and that Todd did not appear to be under the influence of drugs or alcohol. Todd subsequently made incriminating oral statements to Hill.

{¶ 15} In September 2009, Todd was indicted for burglary and receiving stolen property. Todd moved to suppress the evidence against him, arguing that the stop and search were unlawful. The court held hearings on the motion, during which the court heard testimony from Lieutenant Yount, Detective Hill, and Officer Ortel.

{¶ 16} The court orally denied the motion to suppress. The court found that "the initial stop of the defendant is based upon a reasonable and articulable suspicion that criminal activity was afoot and that the defendant may have been involved in it. The evolving circumstances of that encounter and the evolving investigation, the Court believes[,] was constitutional, eventually culminating in the defendant's arrest." The court further found that Todd had been adequately advised of his *Miranda* rights and that he knowingly, intelligently, and voluntarily waived them when he made statements. The trial court subsequently filed a written entry adopting its oral pronouncement.

{¶ 17} After the trial court overruled his motion to suppress, Todd pled no contest to burglary and receiving stolen property. The court sentenced him to a mandatory term of four years in prison for the burglary and to one year for receiving stolen property, to be

served consecutively. Todd appeals from his conviction.

II

{¶ 18} In his sole assignment of error, Todd claims that the trial court erred in denying his motion to suppress. Todd claims that Lieutenant Yount was not justified in stopping and detaining him and that the subsequent searches of his person and cell phone were unlawful.

{¶ 19} In addressing a motion to suppress, the trial court assumes the role of the trier of fact. *State v. Morgan*, Montgomery App. No. 18985, 2002-Ohio-268, citing *State v. Curry* (1994), 95 Ohio App.3d 93, 96. The court must determine the credibility of the witnesses and weigh the evidence presented at the hearing. Id. In reviewing the trial court's ruling, an appellate court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. Id. However, "the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.

A. *Stop and Detention of Todd*

{¶ 20} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, Montgomery App. No. 20270, 2004-Ohio-2738, ¶10, citing *Terry*, supra. An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by

means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or was compelled to respond to questions. *United States v. Mendenhall* (1980), 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497; *Terry*, 392 U.S. at 16, 19.

{¶ 21} "Reasonable suspicion entails some minimal level of objective justification for making a stop – that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones* (1990), 70 Ohio App.3d 554, 556-557, citing *Terry*, 392 U.S. at 27. We determine the existence of reasonable suspicion of criminal activity by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, Montgomery App. No. 19323, 2003-Ohio-1047, ¶14, quoting *State v. Andrews* (1991), 57 Ohio St.3d 86, 87-88.

{¶ 22} Todd argues that most of the observations used by Lieutenant Yount to justify his stop were consistent with innocent conduct. Todd states that his tattoos, attire, and his moving to one side as Lieutenant Yount approached did not create a reasonable and articulable suspicion of criminal activity. Todd acknowledges that the "unsettling encounter with a resident who claimed to have seen him looking into a window" arguably warranted an investigative stop.

{¶ 23} Lieutenant Yount approached Todd and ordered him to stop based on his hearing two dispatches concerning the activities and location of a man generally matching Todd's description. When an investigative stop is made in sole reliance upon a police

dispatch, the State must demonstrate at the suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity. If the dispatch is based solely on an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. *Maumee v. Weisner*, 87 Ohio St.3d 295, 1999-Ohio-68. The appropriate analysis is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. Id. Factors considered highly relevant are the informant's veracity, reliability, and basis of knowledge. Id.; *State v. Reed*, Montgomery App. No. 23357, 2010-Ohio-299, ¶43.

{¶ 24} In assessing the reliability of a tip, courts have generally recognized three categories of informants: (1) the identified citizen informant, (2) the known informant, i.e., someone from the criminal world who has a history of providing reliable tips, and (3) the anonymous informant. *Weisner*, 87 Ohio St.3d at 300; *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶36. "An anonymous informant is generally regarded as comparatively unreliable, and his tip, therefore, will ordinarily require independent and objective corroboration. Ohio courts have generally accorded the identified citizen informant greater credibility. Id. Information from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability, and is therefore presumed to be reliable." *Reed* at ¶44 (internal citations omitted).

{¶ 25} We agree with Todd that the first dispatch was insufficient to warrant a *Terry* stop. The mere fact that an individual does not appear to "fit the area" is not an indicator of criminal activity. However, the second caller indicated that a man with a cut-off sweatshirt and many tattoos was found looking into the caller's garage window; such behavior

reasonably suggested that the man might have been contemplating a theft offense. The caller had identified herself to the dispatcher and had reported suspicious behavior that she had personally observed. Accordingly, the caller's report was presumptively reliable. Very soon after the call, Yount located Todd near the residence of the second caller and he matched the description that the caller provided. Although Todd's conduct may have constituted innocent acts, "it is the very essence of *Terry* to permit officers to briefly detain an individual for investigation in order to resolve ambiguity in their conduct." *State v. Carter*, Montgomery App. No. 21145, 2006-Ohio-2823, ¶15. Based on the totality of the circumstances, Lieutenant Yount's stop and detention of Todd was justified by a reasonable and articulable suspicion of criminal activity.

B. *Search of Todd's Pockets*

{¶ 26} Next, Todd claims that Lieutenant Yount's searches of his front and back pockets were unlawful. He argues that Yount's orders that he empty his front and back pockets exceeded the scope of a protective patdown for weapons. Todd further contends that Yount unlawfully seized "non-threatening" items, including cell phones, jewelry, and foreign coins.

{¶ 27} The State concedes that ordering Todd to empty his front and back pockets was "clearly a search." The State argues, however, the searches of his pockets were searches incident to a lawful arrest. It contends that, at the time of both searches, Lieutenant Yount had probable cause to arrest Todd for criminal trespass, which authorized the search of his person.

{¶ 28} There are several well-established exceptions to the prohibition against

warrantless searches, including the protective patdowns for weapons under *Terry* and a search incident to a lawful arrest under *Chimel v. California* (1969), 395 U.S. 752, 762-763, 89 S.Ct. 2034, 23 L.Ed.2d 685. Protective patdowns for weapons and searches incident to a lawful arrest are distinct concepts with differing justifications and limitations.

{¶ 29} Once a lawful investigatory stop has been made, a police officer may conduct a limited protective search for concealed weapons if the officer reasonably believes that the suspect may be armed or a danger to the officer or to others. *State v. Evans* (1993), 67 Ohio St.3d 405, 408; *State v. Molette*, Montgomery App. No. 19694, 2003-Ohio-5965, ¶13. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence ***." *Evans*, 67 Ohio St.3d at 408, quoting *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612.

{¶ 30} To justify a patdown search, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27; *State v. Smith* (1978), 56 Ohio St.2d 405, 407. The totality of the circumstances must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews* (1991), 57 Ohio St.3d 86, 87-88, citing *State v. Freeman* (1980), 64 Ohio St.2d 291, 295.

{¶ 31} In contrast, "[w]hen conducting a search incident to arrest, police are not limited to a *Terry* pat-down for weapons, but may conduct a full search of the arrestee's

person for contraband or evidence of a crime." *State v. Gagaris*, Butler App. No. CA2007-06-142, 2008-Ohio-5418, ¶16. "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *United State v. Robinson* (1973), 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427.

{¶ 32} The arrest need not precede the search, as long as the arrest "followed quickly on the heels of the *** search" and the evidence obtained during the search was not used to support probable cause for the arrest. *Rawlings v. Kentucky* (1980), 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.") In other words, if probable cause to arrest without a warrant exists prior to a search, it is irrelevant that the search incident to arrest preceded the arrest. *State v. Schickling*, Montgomery App. No. 19090, 2002-Ohio-938. Moreover, the offense for which a defendant is ultimately arrested need not be the same offense that justified the search incident to an arrest. *State v. Hunter*, Montgomery App. No. 20917, 2006-Ohio-2678. Again, the key is whether there was probable cause to arrest when the search was conducted. Id.

{¶ 33} The State does not dispute that Yount's orders that Todd remove items from his front and (later) back pockets exceeded the scope of a limited patdown for weapons. Although Yount's testimony indicates that he told Todd to empty his front pockets due to a concern for his (Yount's) safety, it still resulted in more of an intrusion than a patdown.

Therefore, the lawfulness of the seizure of the items from Todd's front pocket depends on whether there was a constitutional search incident to an arrest.

{¶ 34} "A warrantless arrest is constitutionally invalid unless the arresting officer, at the time of the arrest, has probable cause to make it. *State v. Timson* (1974), 38 Ohio St.2d 122. A warrantless arrest of an individual in a public place for a felony or misdemeanor committed in the officer's presence is consistent with the Fourth Amendment if the arrest is supported by probable cause. *Maryland v. Pringle* (2003), 540 U.S. 366, 124 S .Ct. 795, 157 L.Ed.2d 769." *State v. Thomas*, Montgomery App. No. 21430, 2006-Ohio-6612, ¶8.

{¶ 35} Probable cause to arrest exists "if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶73, citing *Henry v. United States* (1959), 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134. Whether probable cause exists is an objective determination that "turn[s] on the assessment of probabilities in particular factual contexts." *Illinois v. Gates* (1983), 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527. The existence of probable cause is determined by looking at the totality of the circumstances. See *Gates*, 462 U.S. at 230-232.

{¶ 36} The State asserts that Yount had probable cause to arrest Todd for criminal trespass, in violation of R.C. 2911.21(A)(1), which states: "No person, without privilege to do so, shall do any of the following: (1) Knowingly enter or remain on the land or premises of another[.]" A violation of R.C. 2911.21 is a fourth degree misdemeanor.

{¶ 37} In the case before us, Lieutenant Yount responded to Hathaway Road due to a report from an identified citizen that a man with tattoos and a cut-off sweatshirt was looking

in the windows of the second caller's garage. After being stopped by Yount, Todd gave inconsistent and seemingly untruthful statements to explain his presence on Hathaway Road. Todd acknowledged that he entered the land of another, but stated that he was looking for a friend, although he did not know the friend's name. Todd indicated that he was "just guessing" that the Hathaway residence was his friend's home and he "thought that maybe I had the right house." Todd, who was on foot, also stated that he was coming home from work (at 9:00 a.m. from work at a restaurant); his alleged employment was located approximately five to ten miles away. Todd stated that he lived in Oakwood, but said that he was lost; Todd gave an address that was located in Dayton. Todd acknowledged that he had previously been arrested for burglary. Based on the behavior reported by the complainant and Todd's responses to Yount prior to any search, there was probable cause to believe that Todd had committed criminal trespass. Accordingly, at the time that Yount ordered Todd to empty his front pocket (i.e., searched his pockets), Yount could have elected to arrest Todd for criminal trespass.

{¶ 38} This situation is complicated by the fact that criminal trespass is a fourth degree misdemeanor, not a felony. The basic rule is that, to be lawful, a warrantless misdemeanor arrest must be for a misdemeanor committed in the presence of the officer. *State v. Lewis* (1893), 50 Ohio St. 179; *State v. Henderson* (1990), 51 Ohio St.3d 54, 56. See *United States v. Watson* (1976), 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598. This rule is codified in R.C. 2935.03(A)(1), which permits a police officer to arrest and detain a person "found violating" a state law or municipal ordinance until a warrant can be obtained. The phrase "found violating" in R.C. 2935.03(A) means that the police officer is permitted

to make an arrest without a warrant for a misdemeanor committed in his presence or where, from surrounding circumstances, including admissions from the defendant, the officer is able to reasonably conclude that an offense has been committed. *Oregon v. Szakovits* (1972), 43 Ohio St.2d 271.

{¶ 39} Criminal trespass falls under R.C. 2935.03(A)(1). This is as opposed to R.C. 2935.03(B), which permits detention and arrest based on "reasonable cause" for certain offenses (not including trespass), and to R.C. 2935.04, which authorizes detention and arrest by "any person without a warrant" if there is "reasonable cause" to believe the person is guilty of a felony offense.

{¶ 40} Here, Yount located Todd after he had left the complainant's Hathaway Road residence, and he was found walking in the roadway toward the deadend portion of the street. The officer did not observe Todd on the complainant's property. Accordingly, the criminal trespass did not occur in Yount's presence.

{¶ 41} However, Todd was located near the second caller's home, and Yount had responded immediately after hearing the dispatch. Todd admitted to Yount that he had been at the second caller's residence, although he claimed to be looking for a friend. Thus, arguably, Yount could have lawfully arrested Todd under R.C. 2935.03(A) based on the surrounding circumstances, including Todd's admissions that he had been on the caller's property.

{¶ 42} Regardless, a violation of R.C. 2935.03's prohibition of arrest for a misdemeanor that did not occur in the officer's presence is a statutory, not constitutional, violation. It is well-established that statutory violations falling short of constitutional

violations do not trigger the exclusionary rule, unless the legislation requires suppression. E.g., *State v. Myers* (1971), 26 Ohio St.2d 190, 196; *Kettering v. Hollen* (1980), 64 Ohio St.2d 232 (exclusionary rule did not apply to extraterritorial stop, contrary to R.C. 2935.03, which was based on probable cause and thus not a constitutional violation); *State v. Weideman*, 94 Ohio St.3d 501, 2002-Ohio-1484 (same). The Ohio Supreme Court has applied this standard in many contexts. *Weideman*, 94 Ohio St.3d at 505, citing, e.g., *State v. Downs* (1977), 51 Ohio St.2d 47, 63-65 (sheriff's violation of Crim.R. 41, in not returning a search warrant to the judge, did not rise to the level of a constitutional violation); *State v. Davis* (1978), 56 Ohio St.2d 51, 56 (taking of a minor's fingerprints in violation of R.C. 2151.313 does not require the exclusion of fingerprint evidence); *State v. Droste* (1998), 83 Ohio St.3d 36, 39-40 (state liquor control officers' violation of R.C. 5502.61, by making a stop outside their authority, does not trigger exclusionary rule, because defendant's constitutional rights were not violated).

{¶ 43} We have repeatedly held that the exclusionary rule need not be applied to a violation of R.C. 2935.03(A) involving an arrest for a misdemeanor that did not occur in the officer's presence.[2] *State v. McLemore*, Montgomery App. No. 24211, 2011-Ohio-243, ¶29, citing *State v. Mason*, Montgomery App. No. 20243, 2004-Ohio-5777, ¶21, and *State v. Neal* (Jan. 28, 1982), Montgomery App. No. 7426. As such, had Yount arrested Todd for criminal trespass without a warrant and searched him incident to that arrest, the items seized from Todd would not need to be suppressed.

---

[2] A jailable offense, such as trespass, is distinguishable from a minor misdemeanor arrest discussed in *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931.

**{¶ 44}** We recognize that Todd had not been arrested for criminal trespass when Yount ordered him to empty his front pockets, nor is there any indication that Lieutenant Yount intended to place Todd under arrest for criminal trespass "on the heels of" that search. However, these facts are not controlling. As stated by the Twelfth District:

**{¶ 45}** "'The arresting officer's subjective belief or motivation in the detention of an individual is not material to the legality of the detention; the correct test is whether there was objective justification for the detention or arrest.' *State v. Deters* (1998), 128 Ohio App.3d 329, 333, citing *State v. Robinette*, 80 Ohio St.3d 234, 236, 1997-Ohio-343, relying on *Whren v. United States* (1996), 517 U.S. 806, 812-814, 116 S.Ct. 1769; *Dayton v. Erickson*, 76 Ohio St.3d 3, 1996-Ohio-431. Even if the officer subjectively believes he lacks probable cause for arrest, a search is justified if the objective facts nevertheless establish probable cause. *Florida v. Royer* (1983), 460 U.S. 491, 507, 103 S.Ct. 1319, 1329. See, also, *United States v. Roy* (C.A.11, 1989), 869 F.2d 1427 (officer viewed search as a safety inspection, although court upheld as a search based on probable cause)." *State v. Oglesby*, Clinton App. No. CA2004-12-027, 2005-Ohio-6556, ¶20.

**{¶ 46}** Accordingly, we conclude that Lieutenant Yount had authority to conduct a full search of Todd, including the items inside his pockets, for contraband or evidence of crime as a search incident to his arrest.

C. *Search of Todd's Cell Phone*

**{¶ 47}** Finally, Todd contends that Lieutenant Yount unlawfully searched his cell phone when the officer, without permission, dialed the last number called and answered the phone when it rang. We agree.

**{¶ 48}** The warrantless search of data within a cell phone seized incident to a lawful arrest is prohibited by the Fourth Amendment when the search is unnecessary for the safety of law-enforcement officers and there are no exigent circumstances, such as the imminent destruction of evidence. *State v. Smith*, 124 Ohio St.3d 163, 2009 -Ohio-6426. Based on *Smith*, Lieutenant Yount's use of one of Todd's cell phones, without Todd's permission, was unlawful. The trial court should have suppressed any evidence obtained as a result of Yount's use of Todd's cell phone.

III.

**{¶ 49}** The assignment of error is sustained in part and overruled in part.

**{¶ 50}** The judgment of the trial court will be reversed, and the case will be remanded for further proceedings.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:
Andrew T. French
Jeffery Rezabek
Hon. Barbara P. Gorman, Administrative Judge
(trial judge-Hon. Michael T. Hall)