[Cite as *State v. Keller*, 2011-Ohio-5546.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                         :

     Plaintiff-Appellee               :         C.A. CASE NO.   24485

v.                                :         T.C. NO.   09CR4151

KIMBERLY KELLER              :       (Criminal appeal from
                                         Common Pleas Court)
     Defendant-Appellant       :

                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   28th   day of   October   , 2011.

. . . . . . . . . .

JOHNNA M. SHIA, Atty. Reg. No. 0067685, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

PAUL D. GILBERT, Atty. Reg. No. 0010129, 120 W. Second Street, Suite 503, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  After the trial court overruled her motion to suppress evidence, Kimberly Keller pled no contest to possession of crack cocaine, a fifth degree felony. The trial court found her guilty and sentenced her to five years of community control. Keller appeals from

her conviction, claiming that the trial court erred in denying her motion to suppress. For the following reasons, the trial court's judgment will be affirmed.

I

{¶ 2} At the suppression hearing, the State presented the testimony of Detectives David House and Douglas Hall, both of whom were assigned to the Narcotics Unit of the Dayton police department. Their testimony established the following facts.

{¶ 3} At approximately 7:50 p.m. on December 9, 2009, Detective House was "proactively" patrolling "high drug areas" of the city in an unmarked police car. When he came to a red light at the intersection of Free Pike and Gettysburg Avenue, he stopped behind a white GMC Envoy with out-of-county license plates. Because House was aware that many individuals from outside of Montgomery County come to that area of Dayton to purchase illegal drugs, House ran the license plate through his on-board computer system.

{¶ 4} The computer indicated that the vehicle was registered to Kimberly Keller, and there was a description of Keller. The officer learned that Keller had two prior drug-related "field interviews" with the Dayton police, that she was an admitted prostitute and crack addict, that she had a drug conviction in 2003, and that, also in 2003, she had been "nuisance abated" from an apartment where crack cocaine, crack pipes, and a handgun had been found. When the Envoy turned southbound onto Gettysburg, House saw that the driver matched Keller's description. House decided to follow the Envoy.

{¶ 5} After a few miles, Keller's vehicle turned into a residential neighborhood where House had made numerous arrests related to vehicle-to-vehicle drug transactions. After two quick left turns, the Envoy pulled to the right side of the street, parked, and turned

off its lights. House saw the passenger door open and a man, later identified as John Dixon, exit the Envoy. House drove past the Envoy, turned around at the next street, and parked along the curb, facing Keller's vehicle. Although House did not observe Dixon get back into the Envoy, it appears that Dixon got into the driver's seat of the Envoy while House was turning around.

{¶ 6} Within a couple of minutes, a black Mercedes pulled to the curb and parked in front of the Envoy; the driver of the Mercedes got out and went into a residence. (Detective House did not believe the driver of the Mercedes was involved in any unlawful activity.) Almost immediately after the Mercedes parked, the Envoy pulled away from the curb and circled the block. When the Envoy approached the same intersection where it had previously parked, the Envoy again pulled to the curb and turned off its headlights; the occupants remained in the vehicle. Detective House passed the Envoy, crossed the intersection, and pulled into a driveway a few houses away from the Envoy.

{¶ 7} Within a few minutes, a white Yukon approached the Envoy from the opposite direction. The Yukon pulled to the curb directly across from the Envoy and turned off its lights. Dixon exited the driver's seat of the Envoy, closed the door, walked around the front of the Yukon, and got into the front passenger seat of the Yukon. Detective House could not see what occurred inside the Yukon. However, after approximately one minute, Dixon got out of the Yukon and back into the driver's seat of the Envoy, and he drove off. The Yukon also drove away.

{¶ 8} House testified that the Envoy's and Dixon's behavior were "very consistent with narcotic transactions of this type that I've observed again on numerous occasions."

Earlier that day, House had also received a complaint from an identified resident about vehicle-to-vehicle drug transactions that she had observed in the neighborhood; the resident lived two blocks away from where the Yukon and Envoy had stopped.

{¶ 9} House radioed to other officers to follow the Yukon; Detective House and Detective Doug Hall, whom House had contacted, followed the Envoy in unmarked vehicles. The Envoy drove to Third Street, then to Gettysburg, and onto U.S. Route 35. As Hall and House followed the Envoy, Detective House heard radio reports that the Yukon was fleeing from the other officers by running stop signs. Detective Hall drove past the Envoy and got in front of it. When Hall, House, and the Envoy stopped at a red light at the U.S. Route 35 and Abbey Road intersection (with Hall in front of the Envoy and House behind it), House activated his red and blue flashing lights, and the detectives exited their vehicles and approached the Envoy.

{¶ 10} Detective Hall approached the passenger side of the Envoy and made contact with Keller. He asked Keller to exit the vehicle, and she complied. Hall provided *Miranda* warnings to Keller; Keller indicated that she understood them and was willing to talk to him. Keller subsequently told Hall that she had illegal drugs and drug paraphernalia concealed on her person. Hall contacted a female officer, who transported Keller to the police station and retrieved the drugs.

{¶ 11} Keller was indicted for possession of crack cocaine in an amount less than one gram. She moved to suppress the drugs, arguing that the stop was unlawful. After a hearing, the trial court denied Keller's motion. Keller subsequently pled no contest to the charge, and she was sentenced accordingly.

II

{¶ 12} In her sole assignment of error, Keller claims that the trial court should have granted her motion to suppress, because "the officers did not have sufficient basis to stop defendant and defendant's vehicle."

{¶ 13} In addressing a motion to suppress, the trial court assumes the role of the trier of fact. *State v. Morgan*, Montgomery App. No. 18985, 2002-Ohio-268, citing *State v. Curry* (1994), 95 Ohio App.3d 93, 96. The court must determine the credibility of the witnesses and weigh the evidence presented at the hearing. Id. In reviewing the trial court's ruling, an appellate court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. Id. However, "the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.

{¶ 14} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, Montgomery App. No. 20270, 2004-Ohio-2738, ¶10, citing *Terry*, supra. An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that she was not free to leave or was compelled to respond to questions. *United States v. Mendenhall* (1980), 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497; *Terry*, 392 U.S. at

16, 19.

{¶ 15} "Reasonable suspicion entails some minimal level of objective justification for making a stop – that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones* (1990), 70 Ohio App.3d 554, 556-557, citing *Terry*, 392 U.S. at 27. We determine the existence of reasonable suspicion of criminal activity by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, Montgomery App. No. 19323, 2003-Ohio-1047, ¶14, quoting *State v. Andrews* (1991), 57 Ohio St.3d 86, 87-88.

{¶ 16} Keller argues that most of the observations used by Detective House to justify the stop of her vehicle were consistent with innocent conduct. She argues that the detective should not have relied on the field interviews and her past conviction, because they were six years old and thus the information was stale. She further asserts that her presence in an area with high drug activity, standing alone, was insufficient to justify the stop of her vehicle. Finally, she argues that the detective should not have relied on reports that the Yukon was fleeing, particularly when she was not in the Yukon and the State did not establish that the Yukon's alleged flight was motivated by the presence of the police.

{¶ 17} Upon review of the totality of the circumstances, viewed from the perspective of a reasonable and prudent police officer, we conclude that Detective House had a reasonable and articulable suspicion of criminal activity to justify his stop of the Envoy. House initially decided to follow the Envoy due to its out-of-county plates and the

information regarding Keller's past field interviews, "nuisance abatement," and drug conviction. However, House did not initiate a *Terry* stop on that basis.

{¶ 18} House testified that he had nineteen years of experience, that he had participated in "literally thousands" of drug investigations, and that the Envoy's behavior upon entering the residential neighborhood was consistent with vehicle-to-vehicle drug transactions. The Envoy went to a quiet residential street, pulled to the curb, and shut off its lights; there is no evidence that the occupants entered a residence. When a resident parked in front of the Envoy, the Envoy circled the block and parked near the same intersection. Within minutes, the Yukon arrived and pulled to the curb across from the Envoy. Dixon exited the Envoy, went into the Yukon for approximately a minute, and then both vehicles drove away. Although Detective House did not observe what occurred inside the Yukon, based on his experience, the detective had a reasonable and articulable basis to believe that he had witnessed a vehicle-to-vehicle drug transaction.

{¶ 19} Keller correctly states that the Envoy's presence in a high drug area, standing alone, would not have been sufficient to justify a stop of the vehicle. E.g., *State v. Belcher*, Montgomery App. No. 24385, 2011-Ohio-5015, ¶31. Nevertheless, in viewing the totality of the circumstances, House was permitted to consider that an identified resident who lived two blocks away had complained of vehicle-to-vehicle drug transactions occurring in the neighborhood that day and, also, that the events occurred in a neighborhood where such drug activity was common. The fact that the Yukon may have fled from other Dayton police officers upon leaving the neighborhood further buttressed House's reasonable belief that a drug transaction had occurred.

{¶ 20} Keller further argues that all of the conduct of the Envoy's occupants may have constituted innocent acts. While a series of events may appear innocent when viewed separately, taken together, they can warrant further investigation. E.g., *State v. Jarnigan*, Montgomery App. No. 22682, 2009-Ohio-1640; *State v. White*, Montgomery App. No. 18731, 2002-Ohio-262, citing *United States v. Sokolow* (1989), 490 U.S. 1, 9-10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1. "[I]t is the very essence of *Terry* to permit officers to briefly detain an individual for investigation in order to resolve ambiguity in their conduct." *State v. Carter*, Montgomery App. No. 21145, 2006-Ohio-2823, ¶15. See, also, *State v. Todd*, Montgomery App. No. 23921, 2011-Ohio-1740.

{¶ 21} Based on the totality of the circumstances, Detective House had a reasonable and articulable suspicion that an occupant of the Envoy had engaged in a drug transaction. Accordingly, the police were justified in stopping that vehicle, in which Keller was a passenger at the time of the stop.

{¶ 22} Keller's assignment of error is overruled.

III

{¶ 23} The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Johnna M. Shia
Paul D. Gilbert
Hon. Gregory F. Singer