OPINION
{¶ 1} Defendant-Appellant, Curtis J. Hunter, was convicted on his pleas of no contest to one count of possession of crack cocaine, R.C. 2925.11(A), a felony of the first degree. The trial court imposed a prison term of three years, the minimum for a first degree felony. R.C. 2929.14(A)(1). Hunter filed a timely notice of appeal.
 {¶ 2} Defendant-Appellant's counsel filed a brief pursuant toAnders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396,18 L.Ed.2d 493, stating that he can find no non-frivolous error for our review.
 {¶ 3} Defendant-Appellant filed a supplemental brief, pro se. He contends that the trial court erred when it denied his Crim.R. 12(C)(3) motion to suppress evidence of drugs that were found on his person in the course of a warrantless search and seizure by police.
 {¶ 4} The trial court's findings of fact concerning Hunter's arrest and his search and the seizure of the evidence he sought to suppress are set out in the State's brief. They show that two officers who were investigating a suspected crack house saw a car sitting in its driveway. A woman was standing outside the car. As the officers approached, the woman cried, "Police"! When the officer reached the car, they could smell a strong odor of marijuana coming from inside, and through the windows saw crack pipes and a digital scale on the front seat, in plain view. Defendant-Appellant was in the driver's seat.
 {¶ 5} The officers ordered Defendant-Appellant from the car, and when he was outside, one officer performed a pat-down search of his person. The officer who performed the search later testified that he performed the search because of the surrounding circumstances and the fact that Defendant-Appellant was wearing a bulky jacket on a warm day. The pat-down revealed a bag inside Defendant's jacket, which the officer testified that, from his sense of touch and based on his extensive experience in performing searches, he immediately recognized as containing crack cocaine. He then reached inside Defendant's jacket and seized the bag, which contained crack cocaine.
 {¶ 6} The trial court found that the warrantless seizure was justified, based on the "plain feel" exception to the warrant requirement explained in Minnesota v. Dickerson (1993),508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334. Concerning the search, the court found that the officers were justified in ordering Defendant-Appellant from the car and in performing a weapons pat-down, stating: "Defendant was sitting in a car directly in front of the house under investigation for illegal drug activity. `Ohio courts have long recognized that persons who engage in illegal drug activities are armed with a weapon; Martin, supra." Decision, Order and Entry (Jan. 4, 2005), at p. 5, citing Statev. Martin, (May 28, 2004), Montgomery App. No. 20270,2004-Ohio-2738.
 {¶ 7} Defendant-Appellant does not challenge the trial court's application of the plain feel exception of Dickerson,
and we agree. The officer's testimony concerning what he felt inside Defendant-Appellant's coat and why he immediately recognized it as crack cocaine is clear and unambiguous. Neither does Defendant-Appellant question the court's findings under the rule of Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889, that the officers were authorized to detain him for investigation and order him from the car, based on what they saw. Again, we agree. What Defendant-Appellant does question is the trial court's findings concerning the officer's authority to perform the pat-down search of Defendant-Appellant's person that yielded the drugs that were seized.
 {¶ 8} In Terry, the Supreme Court explained that reasonable and articulable suspicion of criminal activity sufficient to justify a detention does not, in and of itself, likewise justify a pat-down search. Nevertheless,
 {¶ 9} "[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id. at ¶ 26, citations omitted.
 {¶ 10} In Terry, an experienced officer saw an individual engaged in conduct preliminary to a suspected "stick-up." Because that type of crime involves a weapon, the officer was justified in performing a pat-down search for weapons when he stopped the suspect to investigate. In more recent years, the same rationale has been applied to pat-down searches in detentions of this kind, on the view that "[t]he right to search is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." State v.Evans (1993), 67 Ohio St.3d 405, 413, cert. den., 510 U.S. 1166,114 S.Ct. 1195, 127 L.Ed.2d 544.
 {¶ 11} The Fourth Circuit has adopted a per se rule allowing pat-down searches, stating that "[t]he indisputable nexus between drugs and guns presumptively creates a reasonable suspicion of danger to the officer." United States v. Sakyi
(1998), 160 F.3d 164, 169. In Martin, supra, we likewise held that "an officer's fear of violence when investigating drug activity is a legitimate concern that will justify a pat-down search for weapons." Id., at ¶ 17, quoting State v. Taylor
(1992), 82 Ohio App.3d 434.
 {¶ 12} In Johnson v. United States (1948), 333 U.S. 10, 14,68 S.Ct. 367, 369, 92 L.Ed. 436, 440, Justice Robert Jackson wrote of the effects on Fourth Amendment protections of judgments made "by the officer engaged in the often competitive enterprise of ferreting out crime." Not only are officers partisan in performing their duties, which is only natural, but that partisanship tends, at least in practice, to expand their authority and, with it, the circumstances in which recognized exceptions to the Fourth Amendment's warrant requirement might apply. We are concerned that some such expansion has occurred with respect to the "drugs and guns" nexus allowing officers to act absent the degree of specificity concerning the potential for violence contemplated by Terry.
 {¶ 13} In Evans, police stopped a man whom they suspected of being the person who, according to a dispatch they received, "had just made a drug transaction." Id., Syllabus by the Court, paragraph one. A pat-down search revealed drugs. Concerning the drugs-and-guns nexus that authorized the pat-down, the Supreme Court observed that "[t]he nature of narcotics trafficking today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous." Id., at 413.
 {¶ 14} In Martin, which this court decided, officers had entered an apartment located in a high drug area in which, according to a fresh tip they'd received, crack cocaine was being smoked and drugs and money were seen laying on the floor. The officers found money on a bed. The defendant then walked into the apartment, and officers detained him and performed a pat-down search. Crack cocaine was found in one of his pockets. We held that the search was justified, because officers "might reasonably suspect that Defendant was there for an illegal purpose relating to suspected drug sales." Id., at ¶ 18.
 {¶ 15} In Evans and Martin, the suspected criminal activity involved drug trafficking. It is the established relationship between drug traffickers who often carry weapons to further their criminal purposes and the needs of officer safety that justify a pat-down search when drug trafficking is reasonably suspected. However, that conduct has more recently been expanded to "drug activity," to which we referred inMartin, but which may include the mere use or possession of drugs. The prospect that weapons may then be involved is less compelling, and the right to search for weapons therefore less automatic, or perhaps not automatic at all.
 {¶ 16} The trial court reasoned that the officers were authorized to perform a weapons pat-down of Defendant-Appellant's person because he was found "sitting in a car directly in front of the house under investigation for illegal drug activities." That conclusion expands the guns-and-drugs nexus beyond trafficking, at least with respect to Defendant's particular conduct. That Defendant-Appellant was involved in drug activities was demonstrated by the odor of marijuana coming from his car and the drug paraphernalia seen on the front seat. However, even those additional factors may be insufficient to portray the safety concerns on which the officers said they acted, at least beyond the "inchoate hunch" that Terry rejected. On an Anders
standard, we cannot find that no frivolous error exists in the findings the trial court made.
 {¶ 17} Nevertheless, Defendant-Appellant himself points the way out of this conundrum. He argues that "had arresting officer Beall seen in plain view, as is alleged, all the illegal contraband (he said he saw) (,) he could have placed defendant under arrest for possession of contraband, then proceeded to search with a search incident to a lawful arrest." Brief, p. 6. We agree, though events did not follow that exact course.
 {¶ 18} The trial court found that the officers saw crack pipes and a digital scales on the front seat of the car in which Defendant-Appellant sat. Possession of such drug paraphernalia is a criminal offense. R.C. 2925.14. The officers therefore had probable cause to arrest Defendant-Appellant for that offense, and incident to his arrest they were authorized to perform a warrantless search of Defendant-Appellant's person. Draper v.United States (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.
 {¶ 19} Defendant-Appellant was not arrested on a drug paraphernalia charge, however. Neither was he charged with that offense after he was arrested. Even so, those outcomes do not diminish the authority to search conferred on the officers by the probable cause before them. "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification." Sibron v. New York (1968), 392 U.S. 40, 63,88 S.Ct. 1889, 1902, 20 L.Ed.2d 917. However, "this means only that the probable cause to arrest must precede the search. If the prosecution shows probable cause to arrest prior to a search of a man's person, it has met its total burden." Peters v. New York
(1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, Harlan, J., concurring, 392 U.S. 40, at 77. The rule likewise applies to evidence of other criminal activity which the resulting search produces.
 {¶ 20} It is clear that the officers were authorized by probable cause to arrest Defendant-Appellant on drug paraphernalia charges, and to conduct a search of his person incident to such an arrest. The search they performed yielded evidence of another criminal violation, however. Even so, the trial court properly overruled Defendant-Appellant's motion to suppress evidence of the crack cocaine offense which that search produced, because the search was authorized by probable cause. Therefore, no non-frivolous error in that regard is presented. Neither does our independent review of the record reveal any other non-frivolous error. Defendant-Appellant's conviction carried a mandatory prison term, R.C. 2929.13(F)(5), and the court imposed the minimum available term of one year. R.C.2929.14(A)(1). Therefore, State v. Foster, 109 S.Ct. 3d 1,2006-Ohio-856, is not implicated.
 {¶ 21} Defendant-Appellant's conviction and sentence will be affirmed.
Brogan, J. and Donovan, J., concur.