OPINION
{¶ 1} Defendant, A.D.B., appeals from an adjudication of delinquency that was entered by the Juvenile Court on a finding that Defendant committed the offense of possession of crack cocaine, R.C. 2925.11(A), (C)(4)(a), a fifth degree felony. That finding was made based on Defendant's plea of no contest to the charge, which followed the court's denial of Defendant's motion to suppress evidence. The court *Page 2 
subsequently entered a dispositional order imposing a term of probation.
 {¶ 2} Defendant argues on appeal the the Juvenile Court erred when it denied his motion to suppress. Defendant contends that a Terry detention that was followed by a weapons patdown lacked a reasonable and articulable suspicion of criminal activity, and that the patdown was illegal because the officer who performed it lacked reasonable and articulable suspicion that Defendant was armed and/or a danger to the officer or others. The patdown yielded the drugs that form the basis of the crack cocaine offense.
 {¶ 3} We find that the trial court did not err when it held that theTerry detention was proper. However, we further find that the weapons patdown lacked the required reasonable and articulable suspicion that Defendant was armed and posed a danger to the officer or others about them. Terry v. Ohio, (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Accordingly, we will reverse the order denying Defendant's motion to suppress, vacate his conviction, and remand for further proceedings.
 {¶ 4} During the evening hours of January 10, 2006, Dayton Police Officer Jeff Hieber was on patrol in his cruiser in the area of North Main Street in Dayton. He observed a young male *Page 3 
standing outside a Marathon fuel station and convenience store. The man stood there for five to ten minutes while Officer Hieber observed him, doing nothing in particular and speaking to no one.
 {¶ 5} Officer Hieber drove off and returned a few minutes later. The young man stood where he had been before. Officer Hieber decided to investigate. The store was posted with "no loitering" signs, and as Officer Hieber later testified:
 {¶ 6} "I know the management, I've talked with them on many occasions, and they have basically pleaded with me to help them curtail their problems they have with prostitutes, drug activity and any type of unsavory activity that's going on in their parking lot by individuals who come out and loiter there, and they have pleaded with me many times to pleas —
 {¶ 7} "MR. DEFFET: Objection as to what other people may have said to the officer.
 {¶ 8} "THE COURT: I'll sustain the objection as to the hearsay aspect of it." (T. 18).
 {¶ 9} Officer Hieber pulled his cruiser into the store's parking lot, parked it, and got out. As he walked toward the young man, Defendant A.D.B., Defendant's "eyes got big when he saw me walking towards him" and "[h]e quickly walked into the store," according to Officer Hieber. (T. 10). Once inside, *Page 4 
Defendant immediately took a place in the line of customers waiting to make a purchase, though Defendant held nothing to purchase in his hands.
 {¶ 10} Officer Hieber testified that Defendant stood close behind the man in line in front of him, and that Defendant "had what appeared to be a clear cellophane baggie in his left hand, which it looked like he was attempting to pass to the person in front of him." (T. 12). The officer could not see whether anything was inside the bag though he knew that whatever it was "looked like a small item." (T. 13). When the other man, who was later determined to be Defendant's cousin, saw Officer Hieber, the man stepped away from Defendant. (T. 14). After the other man purchased the several items he held in his hand, the man left the store. (T. 14).
 {¶ 11} Officer Hieber told Defendant he needed to speak with him. Defendant responded that "he was doing nothing, he was waiting in line to purchase some items at the store." (T. 15). When Officer Hieber pointed out that Defendant appeared to have nothing he could purchase, Defendant replied that his cousin had made the purchases. (T. 16). Following that exchange, Defendant followed Officer Hieber outside to his cruiser. *Page 5 
 {¶ 12} At some point, Defendant had put the cellophane baggie into his left front pants pocket. Officer Hieber asked Defendant what he had put in his pocket, and Defendant replied, "Nothing." (T. 16). Defendant was unable to produce identification. Officer Hieber decided to then perform a patdown search of Defendant's person, having planned to put Defendant in the rear seat of his cruiser. When asked why he performed the patdown search, Officer Hieber testified:
 {¶ 13} "I patted him down for the — basically for the totality of the circumstances, based on the fact that he had been loitering outside the marathon gas station for some period of time, based on the fact that it was at night, based on the fact that that is a known high-crime area, based on the fact that he attempted avoid him when I pulled up and rushed into the store and that I did not know him and that he didn't have any ID, and I had seen him attempt to pass something to someone and place it in his pocket.
 {¶ 14} "Based on the totality of those circumstances, I patted him down for officer safety." (T. 17.)
 {¶ 15} Officer Hieber further testified that he has made other arrests in that same location, including one in which he "recovered a gun off an individual who was loitering out in front of the store two weeks ago." (T. 17). *Page 6 
 {¶ 16} When Officer Hieber performed the patdown his sense of touch revealed a "hard, rocky substance in (Defendant's) left front pocket" (T. 21), which Officer Hieber recognized to be crack cocaine. (T. 21.) Officer Hieber asked Defendant for permission to remove the item, and Defendant gave him permission. The item was a plastic bag containing a rock that field-tested as crack cocaine.
 {¶ 17} Defendant was arrested and transported to the juvenile detention center, where another search was performed. That search produced another plastic bag in Defendant's right front pants pocket that contained five smaller bags of marijuana.
 {¶ 18} Defendant was charged with offenses arising from possession of crack cocaine and possession of marijuana. Defendant moved to suppress the evidence of the drugs found on him. After the Juvenile Court denied his motion, Defendant agreed to enter a plea of no contest to the charge relating to crack cocaine, and in exchange the State agreed to dismiss the charge relating to the marijuana. Defendant was adjudicated a delinquent after the court made a finding against him based on his plea. Defendant was placed on probation. He filed a timely notice of appeal.
 ASSIGNMENT OF ERROR *Page 7 
 {¶ 19} "THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE."
 {¶ 20} In reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Accepting those facts as true, the court of appeals then independently determines, as a matter of law and without deference to the trial court's conclusions, whether those facts satisfy the applicable legal standard. State v. Satterwhite (1997), 123 Ohio App.3d 322.
 {¶ 21} Defendant presents two issues in relation to his assignment of error. The first issue is whether the officer lacked reasonable and articulable suspicion of criminal activity necessary to stop or detain Defendant for investigation when he asked Defendant to step outside the store to speak with him.
 {¶ 22} In State v. Heard (Feb. 28, 2003), Montgomery App. No. 19322, 2003-Ohio-906, this court observed:
 {¶ 23} "In order to conduct an investigatory stop, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. Terry v. Ohio (1968), *Page 8 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889; State v. White (January 18, 2002), Montgomery App. No. 18731. The propriety of an investigative stop must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988), 37 Ohio St.3d 177,524 N.E.2d 489. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. Accordingly, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. Id." Id at ¶ 14.
 {¶ 24} Officer Hieber's testimony demonstrates that the area in which this Marathon station is located is a high crime area. While that factor alone is insufficient to justify an investigatory stop, it is a relevant factor to be considered. Bobo; Illinois v. Wardlow (2000), 528 U.S. 119,120 S.Ct. 673, 145 L.Ed.2d 570. Additionally, Officer Hieber observed Defendant loitering in front of the station for five to ten minutes, despite "no loitering" signs that are posted. After Officer Hieber left the station and returned five to seven minutes later, he discovered that Defendant was still loitering in front of the station. When Defendant observed *Page 9 
Officer Hieber approaching him, he looked startled, his eyes got big, and Defendant quickly rushed inside the station. Defendant's reaction to Officer Hieber is a relevant factor to be considered. State v.Oglesby (Nov. 22, 2006), Montgomery App. No. 21648, 2006-Ohio-6229;Wardlow, supra.
 {¶ 25} Once inside the station Defendant immediately got into the cashier's check out line, even though he had no items in his hands to purchase. Defendant stood very close to the man waiting in line in front of him, and Defendant attempted to pass to his cousin a small item in a clear plastic baggie that Defendant held in his hand. When Defendant's cousin saw Officer Hieber, he turned away and stepped back from Defendant, who put the item in his left pants pocket.
 {¶ 26} Defendant argues that he had a legitimate purpose for being at the station: he was waiting for his cousin who was inside the station, purchasing some items. While certain events when viewed separately can be innocent, taken together the same events may warrant further investigation. State v. Carter (June 2, 2006), Montgomery App. No. 21145, 2006-Ohio-2823.
 {¶ 27} It is the very essence of Terry to permit officers to briefly detain an individual for investigation in *Page 10 
order to resolve ambiguities in their conduct which also suggest criminal activity. Id. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts available to the officer at the time. State v. Freeman (1980), 64 Ohio St.2d 291, 295-296.
 {¶ 28} When the totality of the facts and circumstances in this case are viewed through the eyes of Officer Hieber, and understood as Hieber viewed them in relation to his training, knowledge and experience, particularly Defendant's attempt to evade Officer Hieber and to pass something in a clear plastic baggie to the person in front of him in the checkout line, they present reasonable suspicion of drug activity sufficient to justify the minimal intrusion that a brief Terry
investigatory stop involves. By the time Officer Hieber seized Defendant by asking him to exit the store so they could talk, sufficient reasonable suspicion *Page 11 
of possible criminal activity existed to justify this investigatory stop and detention. Defendant's Fourth Amendment rights were not violated by the Terry investigative stop in this case.
 {¶ 29} The second issue which Defendant presents is whether the patdown search Officer Hieber performed was authorized byTerry, and that is more problematic. In State v. Hunter (May 26, 2006), Montgomery App. No. 20917, 2006-Ohio-2678, this court stated:
 {¶ 30} In Terry, the Supreme Court explained that reasonable and articulable suspicion of criminal activity sufficient to justify a detention does not, in and of itself, likewise justify a pat-down search. Nevertheless,
 {¶ 31} [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted *Page 12 
reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Id. at ¶ 26, citations omitted.
 {¶ 32} In Terry, an experienced officer saw an individual engaged in conduct preliminary to a suspected 'stick-up.' Because that type of crime involves a weapon, the officer was justified in performing a pat-down search for weapons when he stopped the suspect to investigate. In more recent years, the same rationale has been applied to pat-down searches in detentions of this kind, on the view that '[t]he right to search is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed.' State v. Evans (1993), 67 Ohio St.3d 405, 413, cert. den., 510 U.S. 1166, 114 S.Ct. 1195, 127 L.Ed.2d 544."
 {¶ 33} Defendant argues that searching him for weapons was not warranted because the evidence fails to demonstrate that he was uncooperative with Officer Hieber or that he engaged in any furtive movements or threatening behavior, and therefore a reasonably prudent man in those circumstances would not be warranted in the belief that his safety or the *Page 13 
safety of others was in danger. The State responds that given the recognized nexus between drugs and guns and the fact that Officer Hieber reasonably suspected Defendant of drug activity, Officer Hieber was justified in patting Defendant down for weapons. The State relies on our decision in State v. Slusser (August 24, 1994), Montgomery App. No. 14284.
 {¶ 34} In Slusser, the officers saw suspects at a motel that was known for prostitution and gun and drug activity and saw one of them, a woman, enter a room of the motel where that activity occurred the night before. When the suspects were stopped a short time later, one of them, a male, made a furtive movement as if to conceal something on the floor of the car in which they were riding. Another male suspect moved a hand toward his pants pocket. We held those facts sufficient to justify a suspicion that the persons involved were armed and a danger to the officers.
 {¶ 35} Officer Hieber did not testify that he suspected Defendant was engaged in drug activity, or why. We have held that when that happens, the required reasonable and articulable suspicion may be found if is hypothecated by the totality of the facts and circumstances that were before the officer. State v. Gonsior (1996), 117 Ohio St.3d 481.
 {¶ 36} In this instance, Defendant attempted to pass a *Page 14 
small plastic bag to another man, after Defendant had seen Officer Hieber approach. Officer Hieber testified that the location is in a high crime area and that he had performed other arrests there. Illegal drugs, particularly crack cocaine, are typically stored in plastic "baggies." It would put form over substance to find that because Officer Hieber did not specifically state that fact, reasonable and articulable suspicion of drug activity is not shown. It was, if only circumstantially, but the showing was sufficient for Terry purposes in order to detain Defendant for investigation.
 {¶ 37} The Ohio Supreme Court in Evans found that the right to conduct a patdown search for weapons is virtually automatic when individuals are suspected of committing a crime like drug trafficking, for which they are likely to be armed. Id., at 413. The Fourth Circuit has adopted a per se rule allowing patdown searches because the indisputable nexus between drugs and guns presumptively creates a reasonable suspicion of danger to the officer. United Statesv. Sakyi (1998), 160 F.3d 164, 169. In State v. Martin (May 28, 2004), Montgomery App. No. 20270, 2004-Ohio-2838, this court likewise held that an officer's fear of violence when investigating drug activity is a legitimate concern that will justify a patdown search for weapons.Id., at ¶ 17-18. *Page 15 
 {¶ 38} In Hunter, we pointed out that the suspected criminal activity involved in both Evans and Martin was drug trafficking, and we expressed our concern over the unwarranted recent trend to expand the "drugs and guns nexus" to cases involving any "drug activity" which includes the mere use or possession of drugs. We pointed out that the prospect that weapons may be involved in mere use or possession cases is less compelling than in trafficking cases, and therefore the right to search for weapons in possession or use cases is less automatic, or perhaps not automatic at all, because application of an expanded drugs and guns nexus in those particular situations allows police officers to act absent the degree of specificity concerning the potential for violence contemplated by Terry. Id., at ¶ 12-16.
 {¶ 39} The State concedes in its brief that Officer Hieber did not articulate or verbalize what specific criminal activity he suspected Defendant of being involved in, and we conclude that the evidence in this case does not demonstrate that the suspected criminal activity was drug trafficking as opposed to mere use or possession of drugs. Under those circumstances, the recognized drugs and guns nexus, which in trafficking cases automatically justifies a patdown search for weapons, does not automatically justify a weapons search. In *Page 16 
those cases courts must still examine the totality of the articulable facts to determine if they give rise to a reasonable belief that Defendant is armed and dangerous, giving due weight to the reasonable inferences the officer is entitled to draw from the facts in light of his training and experience. Terry.
 {¶ 40} Officer Hieber stated that "[b]ased on the totality of (the) circumstances, I patted him down for officer safety." (T. 17). However, that officer safety is a purpose does not demonstrate that an officer's safety was at risk because a suspect is armed and dangerous. The Fourth Amendment requires some particularized showing that preponderates in favor of a reasonable belief that a risk sufficient to that purpose exists, such as was shown in Slusser.
 {¶ 41} Officer Hieber conceded in cross-examination that in his dealings with Defendant, he was cooperative and never threatened the officer in any way. (T. 46). Further, Officer Hieber acknowledged that he never saw a gun or weapon on Defendant's person. (T. 46). He also testified that when he performed the patdown, "I was interested to find out what it was" that Defendant held in his hand and then put in his pocket. (T. 47). However, nothing in Officer Hieber's *Page 17 
testimony or the surrounding circumstances reasonably supports a suspicion that the article was a weapon of some kind.
 {¶ 42} Unlike in Terry, where the officer reasonably suspected a "stick-up," which by its nature involves use of a weapon, neither the loitering nor the drug possession offenses which the facts and circumstances of this case portray reasonably support a belief that Defendant was armed or dangerous. Further, and unlike in Bobo andSlusser, there was nothing to suggest that Defendant had taken steps to conceal a weapon from view, one that could be used against the officer.
 {¶ 43} The only facts cited by Officer Hieber that support a patdown under the rule of Terry are (1) that the encounter was in a high-crime area of Dayton where the officer had made other arrests, and (2) that in one of those arrests, two weeks earlier, the suspect arrested was found to have a gun. In our view, that other incident is too remote in time and circumstance to present a reasonable and articulable suspicion that Defendant was armed and a danger to the officer or others around them. Further, the fact that the encounter was in a high crime area, without more facts which reasonably suggest that the officer was at risk, does not support the "officer safety" concern that Officer Hieber articulated.
 {¶ 44} We find that there was not a reasonable and *Page 18 
articulable suspicion that Defendant was armed and a danger to the officer or others around them that is necessary to support the patdown search that yielded the drugs which Defendant sought to suppress. Therefore, the trial court erred when it denied Defendant's motion to suppress evidence. Accordingly, the assignment of error is sustained.
 {¶ 45} Having sustained the assignment of error, we will reverse the Juvenile Court's order denying Defendant's motion to suppress evidence, vacate Defendant's conviction, and remand the case for further proceedings on the charges against him.
 BROGAN, J. And FAIN, J., concur. *Page 1