[Cite as *State v. Chase*, **2013-Ohio-2347.**]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                              :

    Plaintiff-Appellee                 :        C.A. CASE NO.   25323

v.                                         :        T.C. NO.   11CR3364

ERIC D. CHASE                              :        (Criminal appeal from
                                        Common Pleas Court)

    Defendant-Appellant                :

                             :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    7th    day of     June    , 2013.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ELIZABETH C. SCOTT, Atty. Reg. No. 0076045, 120 W. Second Street, Suite 703, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}    After the trial court overruled his motion to suppress evidence, Eric D.

Chase pled no contest to assault on a peace officer, possession of crack cocaine, obstructing official business, falsification, possession of heroin, and possession of cocaine. The trial court found him guilty and sentenced him to concurrent sentences totaling 18 months in prison (to be served concurrently with the 12-month sentence imposed in *State v. Chase*, Montgomery C.P. No. 2010 CR 3257), a mandatory fine of $5,000, and a six-month driver's license suspension.

{¶ 2} Chase appeals from the trial court's judgment, claiming that the trial court erred in denying his motion to suppress.[1] For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 3} Dayton Police Officers Zachary Farkas and Jonathan Miniard testified on behalf of the State at the hearing on Chase's motion to suppress. Their testimony established the following facts.

{¶ 4} At approximately 11:30 p.m. on September 29, 2011, Officer Farkas was working street patrol in uniform and in a marked cruiser when he observed a vehicle traveling southbound on Main Street in downtown Dayton without using its headlights. When the vehicle passed by the officer, Officer Farkas turned onto Main Street and drove behind it. After approximately three blocks, the vehicle turned into a BP gas station. Officer Farkas activated his emergency overhead lights and initiated a traffic stop.

---

[1] On October 9, 2012, this court consolidated *State v. Chase*, 2d Dist. Montgomery No. 25322, the appeal from Montgomery C.P. No. 2010 CR 3257, with this appeal. Because the events leading to the charges in these cases occurred at separate times and the issues raised on appeal relate to those factual circumstances, we will issue separate opinions and judgment entries for the two appeals.

{¶ 5}   Officer Farkas got out of his cruiser, made contact with the driver (who was later identified as Chase) and a passenger, and advised the driver of the reason for the stop. Chase indicated that he knew that he did not have his headlights on.   He stated that he had just left a nightclub, and as soon as the cruiser got behind him, he realized that his headlights were off and he turned them on.   Farkas asked to see his driver's license.

{¶ 6}   Officer Farkas testified that, within five to ten seconds of approaching Chase, he smelled an odor of raw marijuana coming from the vehicle.   Farkas had been around marijuana 200 or 300 times, and he was able to distinguish between raw and burnt marijuana.   Farkas testified that he intended to place Chase and the passenger in his cruiser and search the vehicle for marijuana.

{¶ 7}   After taking the passenger's information, Officer Farkas asked Chase to step out of his vehicle and had Chase place both hands on top of his vehicle so the officer could conduct a pat down.   Farkas asked Chase if he (Chase) had anything that could hurt him (Farkas).   Chase responded by asking what was going on.   Farkas informed Chase that he could smell an odor of marijuana coming from the vehicle and that he was going to "check it out."

{¶ 8}   Officer Farkas held Chase by the back of the pants with his right hand and began to pat down Chase's left side.   When he patted down the left pocket, Farkas felt a bulge that he believed were gel capsules of heroin.   Farkas asked Chase what it was, but Chase did not respond.   As Farkas "grabbed a hold of it to squeeze, [Chase's] left hand immediately came down and [Chase] put his hand on his pocket."   Farkas told Chase, "Partner, it's not a big deal," and to put his hand back on the top of the car.   Chase complied.   However, when Farkas again felt Chase's left pocket, Chase's hand came back

down. Officer Farkas grabbed Chase's left arm to place it around his (Chase's) back. According to Farkas,

> At that time, [Chase] turned with his right arm attempting to strike me. [Farkas later described it as a "haymaker" punch.] As I bent over, the top of his arm grazed the top of my head. The two of us got into a struggle. He started to backpedal. I advised dispatch that I was struggling with one. He continued to backpedal away from me, pulled out of his jacket and his shirt, and took off running behind the building.

{¶ 9} Officer Farkas pursued Chase around the building, told Chase he was under arrest, and ordered him to stop. When Chase did not comply, Officer Farkas tasered him. Chase fell to the ground. Farkas "got on top of him" and told him to place his hands behind his back. When Chase did not, Farkas stunned him in his lower back using the taser's "drive stun" setting. At this juncture, other officers who had arrived to assist Farkas helped place Chase in handcuffs.

{¶ 10} Chase was searched upon being arrested. Crack cocaine and an orange pill bottle were found in his right pocket. The officers also retrieved between 50 and 100 gel capsules of heroin and cocaine from Chase's left pocket. Plastic baggies containing suspected drugs were collected from the ground. Chase's vehicle was also searched, and marijuana was located in the center console.

{¶ 11} Officers Farkas and Miniard transported Chase, who had scratches on his face from falling, to the hospital. On the way, Officer Miniard ran the identification that Chase had provided; the name on the ID was Jason McDaniel or McDonald. Miniard could

not read the birth date on the identification, and the photo did not appear to match Chase. When asked about the ID, Chase repeatedly gave an incorrect name and date of birth. While Chase was being evaluated at the hospital, Officer Miniard ran the license plate of the vehicle Chase had been driving. From that information, Miniard learned Chase's correct identity. Officer Miniard also discovered that there were several outstanding warrants for Chase's arrest.

{¶ 12} Chase was subsequently indicted for assault on a peace officer, possession of crack cocaine, obstructing official business, falsification, possession of heroin, and possession of cocaine. Chase moved to suppress the evidence against him, claiming that the officer had "no reason to stop and detain Mr. Chase," that the police "had no justification to search the vehicle Mr. Chase was * * * in," and that any statements he made were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After a hearing, the trial court denied the motion. The court found that Chase was lawfully stopped after dark for driving without headlights, the detention was not unlawfully expanded considering Chase's flight, and Chase was searched incident to a lawful arrest.

{¶ 13} After his motion to suppress was denied, Chase pled no contest to the charged offenses. The court found him guilty and sentenced him accordingly. Chase appeals from his convictions.

II.

{¶ 14} In his sole assignment of error, Chase claims that the trial court erred in denying his motion to suppress. He argues that Officer Farkas "had no legitimate basis to stop the vehicle," because the officer's stated reason for the stop (i.e., that Chase was driving

at dark without headlights) was not credible. Chase asserts that Officer Farkas would have stopped his vehicle immediately, rather than waiting until Chase pulled into the gas station, if the officer were concerned that Chase's driving posed a threat to public safety. Chase argues that any evidence obtained as a result of the stop should have been suppressed as fruit of the poisonous tree. Chase also asserts, in a single sentence, that the search of his vehicle and his person was unlawful.

{¶ 15} In addressing a motion to suppress, the trial court assumes the role of the trier of fact. *State v. Morgan*, 2d Dist. Montgomery No. 18985, 2002-Ohio-268, citing *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The court must determine the credibility of the witnesses and weigh the evidence presented at the hearing. *Id*. In reviewing the trial court's ruling, an appellate court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. *Id*. However, "the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." *Id*.

{¶ 16} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the

scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). The officer must have more than an inchoate hunch or suspicion to justify an investigatory stop.

{¶ 17} A police officer may stop and detain a motorist when he has a reasonable and articulable suspicion that the motorist has committed, is committing, or is about to commit any criminal offense, including a traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry*. *State v. Stewart*, 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 13; *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996).

{¶ 18} Officer Farkas testified that he was facing eastbound on Fifth Street in downtown Dayton, when he observed Chase's vehicle driving southbound on Main Street, without headlights, at 11:30 p.m. Chase drove past Farkas's cruiser, and Farkas turned onto Main Street to follow Chase. Officer Farkas explained that, for his own safety, he tried to run the vehicle's license plate before he stopped it. Farkas had not yet received any results from his search when Chase pulled into the BP gas station, approximately three blocks from where the officer first observed Chase's vehicle. Officer Farkas further explained that he initiated the traffic stop without the results, "[b]ecause the vehicle pulled into the gas station. I didn't want the individuals getting out, both of them."

{¶ 19} In its decision on Chase's motion, the trial court expressly found that Chase "was stopped after dark for reasons having to do with no headlights, which the Court finds by the evidence that the officer was able to observe." These findings were supported by

competent, credible evidence. Moreover, Officer Farkas's initial delay in stopping the vehicle was explained, as were his reasons for initiating the traffic stop without receiving the results of the license plate search. The trial court reasonably credited Officer Farkas's testimony that he observed Chase driving at 11:30 p.m. without headlights, and that observation gave the officer a reasonable and articulable suspicion that Chase had committed a traffic offense, thus justifying the officer's stop of the vehicle. The trial court did not err in concluding that the stop of Chase's vehicle was lawful.

{¶ 20} Chase further argues that the search of his person and his vehicle were unlawful.

{¶ 21} Under the automobile exception, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband, and exigent circumstances necessitate a search or seizure. *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992); *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). A vehicle's mobility is the traditional exigency for this exception to the warrant requirement, and no other exigency is required. *Mills* at 367; *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.E.2d 442 (1999); *California v. Carney*, 471 U.S. 386, 393, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment * * * permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

{¶ 22} Moreover, "[t]he immobilization of the vehicle or low probability of its being moved or evidence being destroyed does not remove the officers' justification to

conduct a search pursuant to the automobile exception." *State v. Russell*, 2d Dist. Montgomery No. 19901, 2004-Ohio-1700, ¶ 34. As stated by the United States Supreme Court:

> [W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody. We firmly reiterated this holding in *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). * * * It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.

*Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982).

**{¶ 23}** Officer Farkas testified that, within five to ten seconds of approaching Chase in his vehicle, the officer detected an odor of raw marijuana coming from the vehicle. The officer also testified that he had been around marijuana 200 or 300 times, and he was able to distinguish between raw and burnt marijuana. "The smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *State v. Moore*, 90 Ohio St.3d 47, 734 N.E.2d 804 (2000). Officer Farkas's testimony established that he smelled an odor of raw marijuana coming from Chase's vehicle and that he was qualified to recognize that odor. The record thus demonstrates that

Officer Farkas had probable cause to believe that Chase's vehicle contained marijuana, and Farkas was permitted under the automobile exception to search Chase's vehicle.

{¶ 24}   Chase's resistance and flight disrupted Officer Farkas's plan to place Chase in his cruiser and to search the vehicle, and another officer ultimately searched the vehicle. Nevertheless, probable cause to search Chase's vehicle existed prior to Chase's struggle with Officer Farkas, and the automobile exception continued to apply, despite the fact that Chase was placed under arrest and could not drive away in the vehicle.[2]

{¶ 25}   Turning to the search of Chase's person, we initially note that Officer Farkas lawfully asked Chase to step out of his vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 109-11, 98 S.Ct. 330, 54 L.Ed.2d 331(1977); *State v. Evans*, 67 Ohio St.3d 405, 407-08, 618 N.E.2d 162 (1993).   As stated above, Officer Farkas testified that, based on his detection of an odor of raw marijuana, he planned to place Chase and the passenger in his cruiser and to search Chase's vehicle for marijuana.   Officer Farkas instructed Chase to place his hands on top of his vehicle, and Officer Farkas began to pat him down.

{¶ 26}   "Authority to conduct a patdown search for weapons does not automatically flow from a lawful stop[.]"   *State v. Stewart*, 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 16.   In general, once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons only if the officer reasonably believes that the suspect may be armed or a danger to the officer or to others.   *Evans* at 408; *State v. Molette*, 2d Dist. Montgomery No. 19694, 2003-Ohio-5965, ¶ 13.

---

[2] The suppression hearing transcript reflects that Chase's passenger remained in the vehicle while Chase struggled with Officer Farkas and attempted to flee.   However, the transcript does not indicate what happened to Chase's passenger or the vehicle after Chase's arrest.

**{¶ 27}** However, "[d]uring a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition." *State v. Lozada*, 92 Ohio St.3d 74, 748 N.E.2d 520 (2001), paragraph one of the syllabus. It is unreasonable for an officer to conduct a pat down for weapons before placing the driver in a patrol car if the sole reason for doing so during the investigation is for the convenience of the officer. *Id.* at paragraph two of the syllabus.

**{¶ 28}** Officer Farkas did not testify that he believed that he was in danger or that he reasonably suspected that Chase was armed. Nevertheless, Officer Farkas testified that he was a lone officer dealing with two individuals (Chase and a passenger) during a traffic stop at night (11:30 p.m.). Chase had told the officer that he had just come from a nightclub. Farkas had smelled an odor of raw marijuana, and he intended to search the vehicle for the contraband, as was permitted under *Moore*, 90 Ohio St.3d 47, 734 N.E.2d 804 (2000). Under these circumstances, it was reasonable, for the officer's own safety, for the officer to pat down Chase for weapons prior to placing Chase in his cruiser so that the officer could safely conduct the search of Chase's vehicle.

**{¶ 29}** Exigent circumstances also justified Officer Farkas's search of Chase upon Chase's exiting from his vehicle. In *Moore*, the Ohio Supreme Court permitted an officer to conduct a warrantless search of an individual for marijuana during a traffic stop after the officer smelled burnt marijuana coming from the vehicle. The court noted that, "[b]ecause marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless

search may be justified to preserve evidence." *Id.* at 52. The court allowed the warrantless search in that case, reasoning:

> Here, Sergeant Greene was alone at the time he stopped defendant's vehicle. He had probable cause to believe that defendant had been smoking marijuana from the strong odor of burnt marijuana emanating from the vehicle and on the defendant. In order to obtain a warrant before searching defendant's person for possible narcotics, he would have had to permit defendant to leave the scene in defendant's vehicle. Having to permit defendant to leave the scene alone, unaccompanied by any law enforcement officer, the dissipation of the marijuana odor, and the possible loss or destruction of evidence were "compelling reasons" for Sergeant Greene to be able to conduct a warrantless search of defendant's person. We find these to be exigent circumstances that would justify the warrantless search of defendant's person.

*Id.* at 52-53.

{¶ 30} As stated above, Officer Farkas was alone with Chase and his passenger, when he smelled raw marijuana coming from Chase's vehicle during the traffic stop. Under the circumstances in this case, Officer Farkas was entitled to search Chase after asking him to step out of his vehicle.

{¶ 31} Another exception to the general prohibition against warrantless searches is a search incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L .Ed.2d 685 (1969). "When conducting a search incident to arrest, police are not limited to a *Terry* pat-down for weapons, but may conduct a full search of the arrestee's

person for contraband or evidence of a crime." *State v. Gagaris*, 12th Dist. Butler No. CA2007-06-142, 2008-Ohio-5418, ¶ 16. "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *United State v. Robinson*, 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The offense for which a defendant is ultimately arrested need not be the same offense that justified the search incident to an arrest. *State v. Hunter*, 2d Dist. Montgomery No. 20917, 2006-Ohio-2678. The key is whether there was probable cause to arrest when the search was conducted. *Id.*

{¶ 32} Chase resisted Officer Farkas's pat down. He threw a punch at the officer, struggled with the officer, and ran behind the building of the gas station. After Chase was tasered by Officer Farkas, other officers assisted in handcuffing Chase. The arresting officers thus had probable cause to arrest Chase for his apparent assault on Officer Farkas and his failure to comply with Officer Farkas's instructions. Chase was searched. Crack cocaine, powder cocaine, and gel capsules of heroin were found in his pockets. Based on the record, Chase was lawfully searched upon his arrest under the search incident to a lawful arrest exception to the warrant requirement.

{¶ 33} In summary, based on Chase's driving without headlights at night, Officer Farkas had reasonable articulable suspicion of criminal activity to justify stopping Chase's vehicle. Once the officer smelled marijuana in the vehicle, Farkas was justified in searching Chase's vehicle under the automobile exception. In addition, Officer Farkas was permitted to pat down Chase prior to placing him in the cruiser, and the search of Chase at the time of

his arrest was permitted as a search incident to a lawful arrest.

{¶ 34} Chase's assignment of error is overruled.

III.

{¶ 35} The trial court's judgment will be affirmed.

· · · · · · · · · ·

FAIN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Michele D. Phipps
Elizabeth C. Scott
Hon. Gregory F. Singer