[Cite as *State v. Menchu*, 2017-Ohio-8252.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27339 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-3738 |
| | : | |
| JOSE M.S. MENCHU | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of October, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 West Second Street, Suite 603, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Jose Menchu appeals from his conviction and sentence for trafficking in cocaine. He contends that he was denied the effective assistance of counsel because his attorney failed to seek suppression of evidence seized following a traffic stop. We conclude that Menchu has failed to demonstrate that counsel's conduct fell below an objective standard of reasonableness. Accordingly, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

{¶ 2} On October 28, 2014, members of the Montgomery County Sheriff's Office R.A.N.G.E. Task Force and the Bulk Smuggling Task Force were involved in an investigation of possible drug activity associated with a residence located at 2149 East Fifth Street in Dayton. On that day, members of the Task Force were watching the residence when, at approximately 7:00 p.m., they observed a blue panel van park at the residence. A man, later identified as Menchu, was observed exiting the van and entering the home. A few minutes later, Menchu exited the residence carrying a plastic grocery bag that he did not have when he entered the home. He returned to the van and drove away.

{¶ 3} Montgomery County Sheriff's Deputy Joseph Caito was participating in the Task Force investigation. On that day, he was in a marked cruiser with his K-9 parter, Gunner. He was sitting at a location on Third Street when he received instructions to look for and follow the van and, if possible, execute a traffic stop. Caito observed the van, and after the van turned onto Third Street, he began to follow it. Caito noticed that

the van's rear license plate light was not illuminated, and he, based upon this, initiated a traffic stop. Caito made contact with Menchu who voluntarily admitted that he was not in the United States legally and that he had no valid driver's license.

{¶ 4} Caito asked Menchu to exit the vehicle. He then deployed Gunner for a free-air sniff around the exterior of the van. Gunner gave a passive alert which indicated the presence of narcotics. A search of the van revealed a plastic grocery bag. The contents of the bag, confirmed to be cocaine, weighed 487 grams. Menchu was taken into custody, and returned to the home at 2149 East Fifth Street. He consented to a search of the house. He was advised of, and waived, his *Miranda* rights. He stated that he had purchased the cocaine found in the van, and that he was looking for a purchaser.

{¶ 5} On November 7, 2014, Menchu was indicted on one count of possesson of cocaine (100 grams) in violation of R.C. 2925.11(A) and one count of trafficking in cocaine (100 grams) in violation of R.C. 2925.03(A)(2). Menchu filed a motion to suppress on December 15, 2014 in which he argued that his waiver of *Miranda* rights was invalid. He subsequently filed a motion to "expand" his motion to suppress in which he argued that he did not execute a valid consent for the search of his residence. Following hearings, both motions were denied.

{¶ 6} On January 13, 2016, Menchu filed a motion to suppress and on January 15 a motion for independent drug testing. Both motions were based upon the claim that the cocaine seized was not pure, and, thus, the weight of the seized contraband had to be calculated based upon the weight of the cocaine, as opposed to filler, within the mixture. After hearing arguments from counsel and permitting briefing on the issue, the trial court overruled the motions.

{¶ 7} Menchu waived his right to trial by jury, and the matter proceeded to a bench trial in October 2016. The trial court found Menchu guilty of both counts of the indictment. The two convictions were merged, and the State elected to proceed to sentencing on the trafficking count. The court sentenced Menchu to a mandatory term of eleven years in prison. Menchu appeals.

## II. Analysis

{¶ 8} Menchu's sole assignment of error states as follows:

INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 9} Menchu claims that his trial counsel should have filed a motion to suppress the results of the search of the van. He claims that the failure to do so was unreasonable, and that counsel was ineffective for failing to do so.

{¶ 10} We evaluate ineffective-assistance-of-counsel arguments in light of the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under this analysis, to reverse a conviction based on ineffective assistance of counsel, a defendant must demonstrate both that (1) counsel's performance was deficient and fell below an objective standard of reasonable representation, and (2) the defendant was prejudiced by counsel's performance. *Id*. at syllabus; *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989).

{¶ 11} To establish the first prong, there must be a substantial violation of counsel's essential duties to his client. *Bradley* at 142. "Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance." *Id.* "Hindsight is not permitted to distort the assessment of what was

reasonable in light of counsel's perspective at the time * * *." *Strickland* at 687. Moreover, " 'attorneys need not pursue every conceivable avenue; they are entitled to be selective.' " *State v. Murphy*, 91 Ohio St.3d 516, 542, 747 N.E.2d 765 (2001), quoting *U.S. v. Davenport*, 986 F.2d 1047, 1049 (7th Cir.1993).

{¶ 12} In order to establish the second prong set forth in *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland* at 694.

{¶ 13} Menchu's claim of ineffective assistance of counsel rests upon his assertion that Caito lacked probable cause to initiate a traffic stop and that any evidence gleaned from that illegal stop would have been suppressed had counsel filed an appropriate motion.

{¶ 14} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. "A police officer may stop and detain a motorist when he has a reasonable and articulable suspicion that the motorist has committed, is committing, or is about to commit any criminal offense, including a traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry*." *State v. Chase*, 2d Dist. Montgomery No. 25323, 2013-Ohio-2347, ¶ 17, citing *State v. Stewart*, 2d Dist. Montgomery No. 19961,

2004-Ohio-1319, ¶ 13.   Indeed, "where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity*."*  *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996).

{¶ 15} Although counsel did not file a motion to suppress the search of the van, there is nevertheless evidence in the record pertaining to the traffic stop.   At trial, Caito testified that when he began to follow the van, he noted that "the rear license plate bulb was not illuminated giving [him] the probable cause, the pc to stop it."  Tr. p. 217.   The relevant statute to which Caito alludes is R.C. 4513.05(A) which requires that every motor vehicle be equipped with "[e]ither a tail light or a separate light * * * so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear."  R.C. 4513.03(A)(1) requires that vehicles must display "lighted lights and illuminating devices as required by" R.C. 4513.05 from sunset to sunrise.

{¶ 16} Menchu does not appear to contest the claim that the required light was either missing or not working sufficiently to properly illuminate the plates.   However, he does argue that because there is no testimony as to whether the license plate was legible from fifty feet the State did not demonstrate that the statute was violated.   He further notes that a detective involved in the investigation had testified that he was able to observe Menchu walking to and from the residence just a few minutes prior to the stop because "there was still some light out, it was beginning to be dusk."  Tr. p. 211.   Thus,

he appears to argue that because there was some remaining light no illumination from a rear license plate light was necessary.

{¶ 17} The evidence demonstrates that the stop was made shortly after 7:00 p.m. in late October. While, as the State urges, we are permitted to take judicial notice of the fact that sunset on the date at issue occurred at 6:40 p.m., we do not find that necessary to a resolution of this matter.[1] Regardless of Menchu's assertion that there may have been enough natural light to see the plates without the use of his illuminating light, the evidence in the record demonstrates that it was dusk and there was "some" light left at the point that Menchu was observed going into and exiting the residence. "Dusk" is defined as the "darker part of twilight," while "twilight" is defined as the light occurring between sunset and sunrise. *Webster's Ninth New Collegiate Dictionary* 389, 1275 (1988). Thus, the record supports a finding that the traffic stop was initiated after sunset, a time that license plates are required to be illuminated. R.C. 4513.05(A) and 4513.03(A)(1).

{¶ 18} We also note that Caito specifically testified that the license plate was not illuminated. Further, when defense counsel asked if he could see the license plate, Caito responded that he was able to see the plate "when [his] headlights hit it." Tr. p. 240. A review of the video taken from Caito's cruiser camera shows that it was dark, street lights were on, other vehicles' headlights were on, and Menchu's license plate had no

---

[1] Evid.R. 201(B) permits a court to take judicial notice of facts that are not subject to reasonable dispute and that are capable of accurate and ready determination from a reliable source. The State cites the sunset/sunrise chart issued by the United States Naval Observatory, Astronomical Applications Department, *Sun and Moon Data for One Day.* The website can be accessed at: http :// aa. usno. navy. mil/ rstt/ onedaytable ?ID= AA&year =2014 &month =10&day =28&state =OH&place= Dayton.

illumination. This evidence is sufficient to permit the trier of fact to reasonably conclude that it was dark enough to require the use of lights to observe the plates and that Menchu's van did not have the proper illumination. Thus, the distance requirement in the statute is irrelevant to this case.

{¶ 19} To the extent that Menchu implies that he did not violate the statute because Caito was able to see the plate, we conclude that he is wrong. "The plain language of the statute contradicts [Menchu's] suggested interpretation. The statute states that a light shall be placed 'as to illuminate ... the rear registration plate .. *and* render it legible.' Ohio Rev.Code § 4513.05 (emphasis added). Therefore, even if the [van's] plate was legible because it was being lit by another source, such as [Caito's] headlights, the statute is violated if the plate is not illuminated by a light placed on the vehicle for the purpose of illuminating the plate." *United States v. Pate*, S.D.Ohio No. 1:09-CR-18, 2009 WL 3418664, * 5 (Oct. 19, 2009); *State v.* Curley, 2016-Ohio-7624, 73 N.E.3d 1050, ¶ 21 (2d Dist.).

{¶ 20} Upon this record, we conclude that trial counsel had a reasonable basis for deciding not to seek suppression of the evidence seized from the van as the record supports a finding that the traffic stop was constitutionally valid because Caito had a reasonable and articulable suspicion that a traffic violation had occurred. We thus conclude that Menchu has failed to establish that counsel's conduct fell below an objective standard of reasonable representation, and we need not proceed to the prejudice prong of the *Strickland* test. Accordingly, the sole assignment of error is overruled.

## III. Conclusion

**{¶ 21}** Menchu's sole assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
John S. Pinard
Hon. Richard Skelton